THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES TRICE *et al.*, Defendants-Appellees.

Third District No. 77-236

Opinion filed February 3, 1978.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

No brief filed for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendants James Trice and Chuck E. Cohen were charged with unlawful possession of a controlled substance, namely, possession of more than 30 grams of heroin. The trial court sustained the defendants' pretrial motion to suppress the evidence of heroin found in the coat pocket of their companion, Peggy Paine, on the evening of their arrest. This is an appeal by the State from that order. The appellees, after proper notice, have failed to respond or file a brief.

The State contends first that the temporary detention of defendants and Peggy Paine for questioning was legitimate and lawful under the stop and frisk provisions of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, pars. 107—14 and 108—1.01), and second, that the search during the temporary questioning was proper and lawful under section 108—1.01 of the Code of Criminal Procedure of 1963. Section 108—1.01 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 108—1.01) provides as follows:

"When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." Ill. Rev. Stat. 1975, ch. 38, par. 108—1.01.

The search and seizure complained of were made on October 3, 1975, by police officers who had no warrants for either a search or for an arrest. Acting on information from an undisclosed informant, the officers waited in the parking area of an apartment building for Trice and Paine from 6 p.m. until their arrival about 11:35 p.m. The informant had said that defendant Trice and Paine would be arriving from Chicago with a quantity of heroin and would be going to Paine's apartment. The informant further told the police that they would arrive about 10:45 or 11 p.m. in a Cadillac. Trice and Paine, together with defendant Cohen, did arrive about 11:35 p.m. in a car, but the evidence does not disclose its make or model. The informant further told police that he dealt in heroin and was supposed to get some of the supply being brought in that night. The informant was known to the police and had been convicted of possession of heroin, a felony, but had never previously supplied information that had resulted in arrests and convictions. The State admits in its brief, "The reliability of the informant in the instant case was not established previous to his informing in the instant situation, nor was his information independently corroborated by other information discovered by the police prior to the stop of the defendants and Paine."

There were six or seven officers, all in plain clothes, present when defendants and Paine arrived. As the three were walking to the apartment, they were stopped and searched. The only witnesses testifying at the hearing on the defendants' motions were two of those officers who testified that there was nothing unusual about defendants and Paine as they walked along or when they were stopped. The purpose in approaching the defendants and Paine was to investigate the possible possession of heroin, and Paine was searched for weapons pursuant to the order of a superior officer. The officer who searched Paine's coat testified that he seized the coat, which she was carrying over her arm, to check for weapons and that he put his hand in one pocket but found it empty. He then put his hand in the other pocket and did not feel anything that felt like a weapon but did feel plastic bags with a soft substance in them. He then removed those items even though they did not feel like a weapon. After the bags were seized, all three persons were arrested and charged with possession of a controlled substance. Both officers testified there

would have not been an arrest if the heroin had not been found.

It is obvious that this was not a search incidental to arrest since the arrest followed the search.

■■ We recognize that the statutes concerned were enacted in the legislative session following the decision in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Considering whether the search can be justified on the authority of *Terry,* we observe that there the Supreme Court said: "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884.) The justification for a search under the circumstances described in *Terry* is the protection of the policeman and others nearby. Such a search is subject to the limitations of the fourth amendment's proscription of unreasonable searches and seizures and must, therefore, be "reasonably related in scope to the justification for [its] initiation." (*Terry v. Ohio,* 392 U.S. 1, 29, 20 L. Ed. 2d 889, 910, 88 S. Ct. 1868, 1884; see also *Warden v. Hayden* (1967), 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642 (Mr. Justice Fortas, concurring).) Thus, the type of search authorized in *Terry* is one confined in scope to an intrusion reasonably designed to discover weapons or objects capable of use as weapons. (*Terry v. Ohio; Sibron v. New York* (1968), 392 U.S. 40, 65, 20 L. Ed. 2d 917, 936, 88 S. Ct. 1889.) A search with this purpose under *Terry,* may not be a general search. See *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.

Our inquiry must focus, therefore, as it did in *Terry,* on whether the policeman had sufficient facts from which he could reasonably infer that defendants were not only engaging in illegal activity, but also that Paine was armed and dangerous. This, of course, would call for close scrutiny of the informant. Were we asked to determine whether the information supplied by the informant here was sufficient to provide probable cause for an arrest and search rather than a stop and frisk, a lesser intrusion than a full-scale search and seizure, there can be no doubt that we would hold that it was insufficient. See *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.

We believe that even if we assume that the informant's information was

sufficient to justify a stop and search for weapons under constitutional standards and was not violative of the statute, the evidence of the narcotics nevertheless should have been suppressed. Accordingly, we make no pronouncement on the sufficiency of the investigatory stop since we have determined that the "frisk" was not properly limited in scope.

■■ Our statute on stop and frisk was patterned on and followed almost identically the New York statute involved in *Sibron v. New York* (1968), 392 U.S. 40, 43, 1892, 20 L. Ed. 2d 917, 923-24, 88 S. Ct. 1889, which involved a stop and frisk where a search of the defendant's pocket revealed an envelope containing heroin. In finding the narcotics inadmissible we find *Sibron* to be persuasively on point. The court said:

> "Even assuming *arguendo* that there were adequate grounds to search Sibron for weapons, the nature and scope of the search conducted by Patrolman Martin were so clearly unrelated to that justification as to render the heroin inadmissible. The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents." (392 U.S. 40, 65-66, 20 L. Ed. 2d 917, 936, 88 S. Ct. 1889, 1904.)

Here, we find no attempt to "pat down" for a limited exploration for weapons in any clothing worn by Peggy Paine. On the contrary, the coat wasn't being worn but was carried on her arm when the officer thrust his hand into the coat pocket. His testimony shows he was looking for narcotics and he found them. When he reached in the pocket he felt plastic bags containing a soft substance, and he believed he had discovered the narcotics. The instant search was not reasonably limited in scope to the achievement of the only objective which might likely have justified its inception—the protection of the officer by disarming a potentially dangerous woman. The facts are clear that the officer intended to make the search as soon as he approached Peggy Paine. The record does not reveal whether he asked any questions or made any

investigation. He simply searched. See *People v. McCarty* (5th Dist. 1973), 11 Ill. App. 3d 421, 266 N.E.2d 862.

We realize the Supreme Court upheld the stop and frisk in *Terry* because they recognized that the realities of on-the-street law enforcement require an officer to act at times on the basis of strong evidence, short of probable cause, that criminal activity is taking place and that the criminal is armed and dangerous. To enlarge the *Terry* decision, as the State attempts to do here, would only open the gates for grave and unplanned erosion of the protection of the fourth amendment.

The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.