THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRUCE WILSON, Defendant-Appellee.

First District (5th Division)   No. 84—0983

Opinion filed February 14, 1986.

PINCHAM, J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Peter D. Fischer, and Graham C. Grady, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

158

JUSTICE MEJDA* delivered the opinion of the court:

The State appeals from an order of the circuit court suppressing evidence seized from defendant following a warrantless search. The State contends that the police had ample justification to stop and search defendant based on probable cause or reasonable suspicion. Defendant, as appellee, has not filed a brief, but this will not prevent resolution of the matter. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Defendant was charged with possession of more than 500 grams of cannabis (Ill. Rev. Stat. 1983, ch. 56½, par. 704(e)) as a result of a warrantless street search conducted on the south side of Chicago on February 17, 1984. At the evidentiary hearing on defendant's motion to suppress, the arresting officer testified that defendant was stopped, and, as the officers exited their car with guns drawn, defendant dropped the duffel bag he was carrying and raised his hands. A pat-down search of his person was conducted and the contents of defendant's duffel bag examined. It was the latter search which disclosed the 13 large bundles of contraband.

The arresting officer explained that the police action was prompted by a radio message of a man with a gun walking northbound from the 5100 block of South Drexel Boulevard; the offender was described as wearing a gray hat, maroon and gray striped sweater, black pants and a black coat. The officer and his partner then proceeded toward the scene, which was a short distance away, and as they reached the corner of 49th Street and Drexel Boulevard, they saw defendant, who was the only person in the area walking, moving northbound on the 4800 block of Drexel carrying a duffel bag. When the defendant turned toward them, the police could see that his clothing matched the description contained in the message. The officers then approached defendant and stopped him.

The trial court concluded that the officers' actions were reasonable, but indicated that it could not find a legal basis for the search of the duffel bag. The court stated that defendant "no longer ha[d] possession of the bag."

█ The State now contends that a police officer may arrest a person when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1983, ch. 38, par. 107—2(c).) Under the totality of the circumstances, the State maintains that the officers acted properly because probable cause was

---

*This opinion was prepared, approved and presented by Justice Mejda, and concurred in by Justice Sullivan, prior to the retirement of Justice Mejda.

established by the facts and circumstances within the officer's knowledge which enables a person of reasonable caution to believe that an offense has been committed and that the person arrested has committed that offense. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605.) The State indicates that probable cause did exist under the circumstances presented based on the description of the offender which matched defendant and defendant's location in relation to the broadcast information. Alternatively, the State maintains that, even if probable cause did not exist, the police could conduct a reasonable search pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, because the specific and articulable facts available to the arresting officers would have warranted a person of reasonable caution to believe that prompt police action involving a limited search for weapons to protect their safety was necessary. The State maintains that under such circumstances the officer could also search any area within the person's immediate grasp and any item or container within the immediate area of the suspect in order to determine if it contained a weapon. The State contends that it would be impossible to ascertain whether the duffel bag contained a gun by merely touching the outside of the bag and that a search of the bag was therefore justified given the fact that the police had at least a reasonable suspicion that defendant was carrying a gun. Finally, the State asserts the proposition that defendant abandoned the bag and may therefore not contend that it was seized and searched improperly.

We dispense with the State's final argument by merely noting that in this case the defendant dropped a duffel bag as the police exited their squad car with drawn guns. It is clear that if in effect an abandonment did occur by the defendant, such abandonment was prompted by the police action. If the police action was improper, the State may not rely upon the defendant's dropping the bag to justify the subsequent seizure and search of the bag. (See 1 LaFave, Search & Seizure sec. 2.6, at 373-74 (1978).) Further, under the circumstances we do not believe that defendant abandoned a reasonable expectation of privacy as to the contents of the duffel bag. See *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. ___, 88 L. Ed. 2d 274, 106 S. Ct. 267.

■ We believe that probable cause for defendant's arrest existed, and that a search of defendant's person and property within his immediate reach in the duffel bag was proper. Here, the trial court accepted the arresting officer's testimony as truthful because it stated that he and his partner had acted reasonably under the circumstances. Clearly the officers were acting upon specific and articulable informa-

tion received through a radio broadcast indicating that a man was carrying a gun. They saw the defendant in the area near the sight described in the occurrence, defendant matched the clothing description, and he was walking in the direction of the individual described in the broadcast. We concur in the trial court's conclusion that the police acted properly in stopping the defendant. The fact that they exited the vehicle with guns drawn is only a circumstance which indicates that the officers actually feared for their safety in approaching someone who might possibly be carrying a gun. In *People v. McElroy* (1976), 44 Ill. App. 3d 1047, 358 N.E.2d 1180, police responded to a radio broadcast of a woman with a gun. After concluding that defendant was the more likely of two women on the street to have the weapon, police arrested her and then found the gun in her purse. This court held that the arrest and subsequent search of her purse disclosing the weapon were proper. The facts of *McElroy* closely resemble the facts of the present case. As such the police officers' search of the bag here was made incident to a lawful arrest, and defendant may not contend that the officers acted improperly.

■ Finally, even if probable cause did not exist to arrest defendant and search his bag, a limited search under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, to protect the police officer who has a reasonable suspicion that defendant may be carrying a dangerous weapon was proper. It would seem contrary to this tenet that the contents of a bag which the defendant was carrying and was within his immediate grasp could not be subject to a search if the officers could lawfully search the defendant's person. See 3 LaFave, Search & Seizure sec. 9—4, at 134 (1978) and 1985 Pocket Part at 78-79.

■ We therefore believe that the police acted properly in searching the duffel bag which defendant had dropped to the ground upon the approach of the officers. To hold otherwise would subject these officers to the possible danger that upon having the duffel bag returned to him by the officers when no evidence of a weapon was found on his person, defendant would then produce the weapon from the duffel bag and fire at the officers. See *People v. Berry* (1977), 54 Ill. App. 3d 647, 370 N.E.2d 26, where the police searched a jacket thrown to the ground by defendant upon their arrival in response to a dispatch of a man with a gun.

■ Accordingly, the order of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings. Since this appeal is not taken from a conviction, we deny the State's request that defendant be assessed $50 as costs for this appeal.

Reversed and remanded.

SULLIVAN, P.J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. This case is but one of many in which the triple barrel is fired, "(1) radio message probable cause, (2) stop and frisk, and (3) drop," to validate an arrest and/or a search. Invariably, the trial court or the court of review holds that one of the barrels has hit the legality target.

Although the trial court in the case before us stated, "I think the officers acted reasonably and obviously in doing exactly what they did," the reasonableness of the officers' conduct is not the criteria for determining the validity of an arrest. The constitutional requirement is "probable cause" for the arrest. An officer may act *reasonably* in making an arrest but without *probable cause*, in which event the arrest is constitutionally invalid.

The trial judge did not predicate his ruling on the "radio message probable cause" barrel. Rather, the trial judge predicated his ruling on the "drop" barrel, holding:

> "But I am somewhat troubled. I don't know how they can get into the bag. I say that advisedly having some idea what was in the bag. I just don't know how you can justify them going into the bag. He no longer has possession of the bag. Motion to suppress will be sustained."

This court, however, relies on the "radio message probable cause" barrel to strike the legality target for the defendant's arrest. The reliability of the source of the information of the radio message is not revealed in the record before us; nor is the source of the information of the radio message disclosed. The time that the information was initially submitted to the radio dispatch is not given. To constitutionally validate an arrest and search on uncorroborated radio message testimony and the officers' possibly post-arrest acquired information subjects the privacy of all citizens to the unbridled whims of law enforcement officers.

In this case, the record reveals that the police reports of the facts and circumstances of the defendant's arrest were necessarily prepared after the defendant's arrest, which arrest occurred on February 17, 1984. Yet, on March 21, 1984, on the hearing of the defendant's motion to suppress, the following colloquy occurred and the arresting officer testified:

> "Q. Just prior to approaching the defendant, had you received a call on the radio?

162

A. Yes.

MR. SCOTT [attorney for defendant]: I am going to object to any testimony regarding any calls on the radio. We served a subpoena on the police department for that, and the police department did not honor the subpoena. They told us they erased the tapes on the 20th of February, three days later.

THE COURT: Well, I will allow him to answer the question. Objection overruled. He may answer.

THE WITNESS: Would you repeat the question?

MR. HYNES [assistant State's Attorney]: Did you receive a call on the radio in the squad car shortly before seeing the defendant?

A. Yes.

Q. What was the nature of the call?

A. Simulcast of a man with a gun.

Q. Did they give you any other information? '

A. Walking northbound on Drexel Boulevard from 51st Street and also gave a clothing description.

Q. What was that clothing description, to the best of your recollection?

A. Gray hat, maroon and gray striped sweater, black pants and a black coat."

The defense attorney's efforts to obtain the tapes of the radio message for possible impeachment purposes were successfully thwarted by erasure of the tapes. Corroboration, if any, of the officer's testimony of the radio message was obliterated by the police department.

Further examination of arresting officers regarding the clothing description is quite notable.

The arresting officers knew the descriptive content of the radio message when they prepared their reports of the defendant's arrest. More importantly, they were certainly aware of the description of the defendant's wearing apparel when they prepared their post-arrest police reports. Examination of the arresting officer on the clothing description in the radio message and his post-arrest police report is also . quite notable:

"Q. Officer, did you prepare a case report in this matter?

A. My partner prepared the case report.

Q. Your partner was in the car with you when you heard the simulcast?

A. Yes.

Q. Did you read the report he prepared and sign it?

A. Yes, I did.

Q. I show you what's marked Petitioner's Exhibit 1, for identification, and ask you to look at that and tell me if that is the report that was prepared in this matter?

A. This is an arrest report.

Q. Well, did you prepare an arrest report?

A. Yes.

Q. Now, sir, would you look at that report. Anyplace in that report does it say the man had on a black overcoat?

A. No, it doesn't.

Q. Is there any place in that report where it says a man was walking north from 51st Street?

A. No, it doesn't.

\* \* \*

MR. SCOTT: It was dark out, it was nighttime, is that right, is that correct?

A. Yes.

\* \* \*

Q. Were you able to see the striped shirt when you approached the defendant?

A. Not when we originally approached him.

Q. You approached him from behind, is that correct, sir?

A. That's correct."

The arresting officer's testimony regarding the "drop" barrel aspect of the arrest and search is also revealing:

"Q. What happened next?

A. We exited our vehicles. The defendant dropped the large duffel bag and put his hands in the air.

\* \* \*

Q. Did either of you have your guns drawn?

A. Yes, I believe we did.

\* \* \*

Q. And, officer as you approached the defendant, what did your partner do with relation to that bag?

A. He took the bag and felt the bag.

Q. And after making—feeling the bag, what did he do?

A. He opened the bag.

Q. And what was observed inside the bag?

A. Several large packages that were crammed into the duffel bag and wrapped in cellophane.

Q. What was inside those cellophane bags?

A. Crushed green plant.

*  *  *

Q. Now, sir, when your partner was feeling this duffel bag, do you know whether or not he felt any hard objects in the duffel bag?

A. He told me he did.

Q. What were the hard objects he got out of the duffel bag that felt like a gun or a weapon?

MR. HYNES: Objection.

THE COURT: I will let him answer, if he can.

THE WITNESS: We removed 13 large bundles of what now proved to be green crushed plant that was tightly wrapped in clear Saran Wrap.

MR. SCOTT: They felt like guns?

A. Hard object.

Q. They felt like guns?

MR. HYNES: Objection.

THE COURT: Sustained."

It is difficult to perceive how crushed green plant, packaged in cellophane inside a duffel bag could feel like a gun. It is therefore understandable why the assistant State's Attorney objected to this inquiry. It is not understandable, however, why the trial judge sustained his objection.

Although it is axiomatic that the fruit of a search cannot be relied upon to justify the search, nevertheless, it is noteworthy in the case before us no gun was found on or about the defendant—which was the "radio message probable cause" for the officers initial arrest of the defendant.

The citizen's constitutional right of privacy and to be free from unwarranted government intrusion merits greater protection and should not be allowed to be so callously infringed upon and violated as it was in the case before us. The following authorities relied on by the majority to validate this arrest are not controlling.

In *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the defendant and his companion were observed by the officer repeatedly strolling back and forth, together and alone, peering in a store window, as though "casing a job, a stick-up." The officer approached and identified himself and asked for their names. The men mumbled something. The officer spun Terry around, patted down the outside of his clothing and felt a pistol in the left breast overcoat pocket. The "stop and frisk" was held not to violate Terry's fourth amendment constitutional right of privacy. Such is not the case before us.

*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. \_\_\_, 88 L. Ed. 2d 274, 106 S. Ct. 267, involved the search of a garbage bag which had been "placed in the second-floor landing of an outdoor stairway which served a multi-unit apartment building." The court held that this search "was no more intrusive than what the defendant might have expected from passing tenants, vagrants, neighborhood children or animals," and "since the defendant did not have a reasonable expectation of privacy as to the place searched, the search did not violate the Fourth Amendment ***." Such is not the instant case.

In *People v. McElroy* (1976), 44 Ill. App. 3d 1047, 1050, 358 N.E.2d 1180, on facts appreciably different from the instant case, the court stated, "We recognize the danger inherent in police use of anonymous information for intrusive governmental action and expressly limit the effect of our opinion in that regard to exigent circumstances of the degree found in this case. [Citations.] We conclude that under the circumstances and exigencies of this case, the conduct of the police officer in arresting defendant and searching her purse was not unreasonable and did not exceed constitutional or statutory mandate." This is not the case before us.

I am of the opinion that the arrest of the defendant and the search of his duffel bag were constitutionally impermissible and the trial court's order sustaining the defendant's motion to suppress should be affirmed.