THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT GALVIN, Defendant-Appellee.

Third District   No. 3—87—0011

Opinion filed October 9, 1987.

HEIPLE, J., dissenting.

Appeal from the Circuit Court of Will County; the Hon. Bruce Falk, Judge, presiding.

Edward Petka, State's Attorney, of Joliet (Gerald P. Ursini, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Robert Galvin, was charged with theft and possession of burglary tools. (Ill. Rev. Stat. 1985, ch. 38, pars. 16—1(d)(1), 19—2(a).) The trial court granted the defendant's motion to suppress all items seized pursuant to a search. The State appeals. We affirm.

■■ Initially, we note that the defendant-appellee failed to file a brief. We, nevertheless, choose to decide the merits of the appeal, as the record is simple and the claimed error can be easily decided without an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

While patrolling the predominately suburban Chaney area for burglary suspects on September 14, 1986, Crest Hill police officer Timothy Simenson saw the defendant transporting another male passenger. Officer Simenson followed but lost sight of the defendant after the defendant parked his vehicle and disappeared into a dark yard for approximately 40 minutes. The empty-handed defendant reappeared and later briefly returned to that location. The defendant also stopped and peered into vehicles at "Transmission Werks." The defendant explained, at the hearing on the motion to suppress, that he was simply checking the hours of business.

Officer Simenson had no warrant to arrest the defendant or search his vehicle. The defendant neither violated any laws nor possessed fruits of a crime during the surveillance period. Nevertheless, Officer Simenson stopped the defendant to investigate his activities in the area that evening and on the night of a prior burglary five days earlier. Four police vehicles surrounded the defendant's automobile and three officers, with guns drawn, ordered him and his passenger to exit. Even though neither individual resisted nor threatened the of-

ficers, they were frisked without their consent. Officer Simenson felt an object he suspected was a weapon, but found only an ammunition clip and a padlock. He then detained the defendant for unlawful possession of ammunition and proceeded to a nonconsensual search of the defendant's vehicle, which produced a screwdriver and a flashlight. No charges for the possession of ammunition were ever filed.

In support of its argument on appeal that the court erroneously suppressed the evidence seized, the State contends that pursuant to a valid *Terry* stop, the officer justifiably searched the defendant burglary suspect. We disagree.

The Illinois Code of Criminal Procedure of 1963 provides that a peace officer may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that a person is committing, is about to commit, or has committed an offense as defined by the Code. (Ill. Rev. Stat. 1985, ch. 38, par. 107—14.) The statute is predicated upon the principles in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488 (legislative intent was to codify *Terry*).

■ In the instant case, while patrolling the Chaney area Officer Simenson spotted the defendant, who was also suspected of other criminal activity and had been in the area on the night of a prior burglary. After the officer observed the defendant visit a dark house and a closed business, he stopped the defendant for questioning. We find that Officer Simenson reasonably suspected that the defendant's unusual conduct could be indicative of past or prospective criminal activity. Consequently, Simenson appropriately detained the defendant for temporary questioning. See *People v. Paskins* (1987), 154 Ill. App. 3d 417, 506 N.E.2d 1037.

■ A separate issue is whether the officer was justified in searching the defendant properly stopped for questioning under *Terry*. It is clear that the mere fact that a person has been properly stopped pursuant to *Terry* is not a *per se* justification for a search. Rather, the Illinois Code of Criminal Procedure permits an officer to search the person for weapons only if he or she "reasonably suspects that he or she or another is in danger of attack." (Ill. Rev. Stat. 1985, ch. 38, par. 108—1.01.) An intrusive pat down for weapons is only justified if an officer reasonably feels threatened because a suspect is legitimately presumed armed and dangerous. *People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.

In the instant case the defendant immediately stopped and exited his vehicle as requested by three police officers with drawn guns. In-

stead of being interrogated, the defendant was ordered to stand against his vehicle for a pat-down search. The officers admitted neither feeling threatened nor believing that the defendant was armed and dangerous. The cooperative defendant did not attempt to escape. Nevertheless, Officer Simenson searched the defendant and, upon finding an unidentified bulge, invaded the defendant's pocket and thereafter his vehicle.

Searches pursuant to the statute at issue have been found improper in a variety of instances, some where the circumstances were far more exigent than the instant case. (See, *e.g.*, *People v. Byrd* (1977), 47 Ill. App. 3d 804, 365 N.E.2d 443.) Although the factual patterns of the cases falling under the instant statute are too diverse to permit generalizations, the courts in this State have often forbidden the subject police activity as violative of the statutory directive. See *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381.

The State's brief on appeal asserts that reversal of the instant suppression order is strongly supported by the supreme court's decision in *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537. In *McGowan* the court upheld a pat search based upon an officer's testimony that he suspected the defendant to have been an armed burglar. The dissent relies with approval upon *McGowan*.

The majority of this court finds that the facts in *McGowan* are distinguishable from those at bar, and we find no merit in the contention that such case supports a reversal of the subject suppression order. In the instant case Officer Simenson, who conducted the search, never testified that he believed the defendant was armed or dangerous. Five officers were on the scene of this search and three had their guns drawn as the search ensued. This conduct exhibits a clear abuse of police discretion.

■ This court does not hold that an officer need question a suspect prior to frisking him if he reasonably believes he is in danger of attack. Rather, we hold that, since the officer in the instant case believed that he was not in any danger, the pat search which he conducted was in violation of the statutory law of this State, as well as United States Supreme Court case law.

We emphasize that the right to frisk does not automatically follow the right to stop. The Illinois statute allowing searches pursuant to valid stops is to be construed so as to subject the police action to fourth amendment constraints. (*People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.) In the instant case the defendant's personal security was unnecessarily invaded without provocation and without right conferred under the laws of this State. We consider the nonconsensual

search an invalid, unconstitutional, unreasonable search and seizure. Consequently, despite the valid *Terry* stop, all items found in the nonconsensual search were appropriately suppressed.

To contend that the trial court's invocation of statutory and constitutional safeguards under the clear and unambiguous facts of this case "is legal manipulation of the type that engenders disrespect for the entire criminal justice system" is absurd.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

SCOTT, J., concurs.

JUSTICE HEIPLE, dissenting:

The suppression order in this case and the majority opinion which affirms that order are wrong. Not merely wrong or simply wrong. It is much worse than that. It is the sort of judicial ruling that causes criminals to laugh and law abiding citizens to wince. It is legal manipulation of the type that engenders disrespect for the entire criminal justice system.

When the pertinent facts of this case are set forth and the relevant legal principles are applied, it is readily apparent that the search and seizure were reasonable and constitutional. The majority opinion fails to adequately set forth the facts in affirming the trial court's suppression ruling.

The full facts are as follows. On September 14, 1986, Officer Simenson was patrolling a predominantly white neighborhood that had experienced a rash of burglaries during September. He drove an unmarked car and wore plain clothes. The burglaries had occurred within the hours of 7 to 10 p.m. At approximately 9 p.m., the officer spotted two black males driving a car slowly through the neighborhood. The car matched a description of a car reported to the police by a tipster prior to September 14, 1986. The tipster had reported that she noticed a 1974, brown, four-door Oldsmobile parked next to her car on September 9, 1986, an evening when one of the burglaries occurred. The car did not appear to be occupied. Shortly thereafter, she saw a black male walking down a nearby alley while hiding something under his coat. He entered the brown Oldsmobile and at that point, a passenger who had apparently been hiding in the car appeared. The two then drove away.

The officer ran a license check on the vehicle and found that the

car was registered to the defendant, whom the officer knew to have a criminal history involving burglary and theft. The address given for the defendant was not in the neighborhood.

The officer observed the defendant and his companion park the car, get out, and walk to the backyard of a house that was dark. He then lost sight of them. Forty minutes later the two reappeared. Officer Pesavento, another officer conducting surveillance, informed Officer Simenson that one of the men put an object into his jacket pocket. He also told Officer Simenson that they were glancing about in every direction. When the suspects returned to the area of their vehicle, they exchanged a "high five."

The men walked past the brown Oldsmobile to a business that services cars, but which does not sell them. They looked in the cars parked at the business. They returned to their car and after driving around for a short time, they pulled into the driveway of the home they had gone to earlier. After several minutes, they backed out of the driveway and proceeded north. Then, they stopped the car, turned off the lights and opened the trunk, but did not remove anything. They walked to a yard directly across the street, and the officer again lost sight of them. When a marked police car drove by shortly thereafter, the defendant and his companion returned to their car and left the neighborhood.

The police pulled over the defendant and his companion. As Officer Simenson approached the brown Oldsmobile, he noted that the defendant had a pair of gloves in his lap. It was not cold and the officer wore neither a coat nor gloves. The men were ordered out of the car, and a pat-down search was conducted. An ammunition magazine containing live ammunition and a padlock were found on the defendant's person. Officer Simenson, believing that the defendant was under 18 years of age and that possession of ammunition by someone under the age of 18 is illegal, placed the defendant under arrest, and proceeded to search the car. He discovered a large screwdriver and a flashlight under the driver's seat.

At a subsequent suppression hearing, the judge ruled in favor of the defense. The State appeals. The majority affirms the trial court, apparently holding that a search is unreasonable when the officer who conducted the search neither felt threatened nor believed the defendant to be armed and dangerous.

The fact that Officer Simenson admitted he did not feel threatened or believe the defendant to be armed and dangerous did not make the pat-down search unreasonable. The test to be applied is objective, not subjective:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.]" *(Terry v. Ohio* (1968), 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1883.)

Officer Simenson believed he was dealing with a burglar, and it had been reported to him that the defendant put something in his coat pocket. A reasonably prudent officer in the circumstances presented here would conduct a pat-down search, if not for his own safety, then for the safety of those around him. The majority's suggestion that an officer must positively feel threatened or believe the defendant to be armed and dangerous before conducting a pat-down search ignores the objective standard to be applied, and the fact that such a requirement poses safety risks.

The conclusion that the search in the instant case was reasonable is also warranted by our supreme court's ruling in *People v. McGowan* (1977), 69 Ill. 2d 73, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624, where the court stated:

"It is not unlikely that a person engaged in stealing another person's property would arm himself against the possibility that another person will appear unexpectedly and object strenuously." *(People v. McGowan* (1977), 69 Ill. 2d 73, 79, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.

The court then held that if an officer reasonably suspects that a person recently was engaged in stealing another's property, then it is also reasonable for the officer to conclude that the person is armed, and that he will not submit peacefully to questioning. An officer is not required to risk his life and that of the other officers working with him by assuming the contrary. 69 Ill. 2d 73, 79.

The majority fails in its attempt to distinguish *McGowan,* and its statement that the holding there was based on an officer's testimony that he suspected the defendant was an armed burglar is simply wrong. The court did not base its holding on the officer's testimony, but rather, on its own finding that it is reasonable for an officer to conclude that a burglary suspect is armed and that he will not submit peacefully to questioning. *McGowan* should control the instant case, not the appellate court decisions decided prior to *McGowan* relied on by majority.

The pat-down search resulted in the discovery of live ammunition. It is unlawful for a person under the age of 21 to possess ammunition if he has been convicted of a misdemeanor other than a traffic of-

fense. (Ill. Rev. Stat. 1985, ch. 38, par. 24—3.1(a)(2).) The defendant in the instant case was 18 years of age, possessed ammunition, and had a criminal history for burglary and theft. Thus, the defendant's arrest was lawful. Pursuant to a lawful arrest, a warrantless search of a car is permissible. (*People v. Bayles* (1980), 82 Ill. 2d 128, *cert. denied* (1981), 453 U.S. 923, 69 L. Ed. 2d 1005, 101 S. Ct. 3160.) Thus, the items in the car were lawfully seized, and the trial court's ruling suppressing their use as evidence should be reversed.