THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY CLEAVES, Defendant-Appellant.

Fifth District   No. 5—86—0799

Opinion filed May 13, 1988.

KARNS, J., specially concurring.

Daniel M. Kirwan and Mary M. Menard, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Mark Howard Clarke, State's Attorney, of Cairo (Kenneth R. Boyle, Stephen E. Norris, and Kathy J. Geer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

A jury found defendant, Timothy Cleaves, guilty of burglary, theft and criminal damage to property, and defendant was subsequently sentenced to concurrent terms of seven years, 364 days, and 364 days of imprisonment, respectively, for the offenses. Defendant raises four issues on appeal: (1) whether the arresting officer's search of the defendant violated defendant's fourth amendment rights; (2) whether defendant could be convicted for both criminal damage to property and burglary; (3) whether defendant is entitled to 95 days', instead of 15 days', credit against his sentences; and (4) whether defendant is required to pay $20, rather than $25, to the Violent Crime Victims Assistance Fund.

At the suppression hearing, police Officer Scott Walston testified that between 5:30 a.m. and 5:40 a.m. on August 10, 1986, Officers Thomas and Shafer advised him that they had observed the defendant wearing blue jeans and a dark-colored shirt and riding a bicycle at about 4:30 a.m. approximately one block from Khourie Brothers Store in Cairo, Illinois. At 5:43 a.m., Walston received a call that a burglary had taken place at Khourie Brothers. Walston was not given any description of the alleged burglar. Walston testified that he knew defendant was on parole for a prior burglary. When he received the call about the Khourie Brothers burglary, Walston proceeded in an unmarked car in the direction where defendant had been spotted by Thomas and Shafer. Walston stopped defendant. Defendant was carrying something large and bulky in his lap. It was dark and raining at that time and Walston testified that he could not identify the object. Defendant did not have his shirt on; the shirt was covering the object

on his lap. Walston asked defendant what was under the shirt, and defendant said that nothing was under it. Walston then raised up the shirt and saw an assortment of hats, one of which had a price tag attached to it. Walston then placed defendant under arrest at approximately 5:48 a.m. The trial court found that Walston had probable cause to stop and search defendant and thus denied defendant's motion to suppress the evidence. Fred Khourie, an employee of the store, testified at trial that the hats recovered from defendant were taken from the store on the morning of the burglary.

■ The State initially argues that Walston had probable cause to make a warrantless arrest of defendant prior to the search. Because Walston could have properly made a warrantless arrest, the State contends that he also was entitled to make a full search of defendant. The State is correct that a police officer can make a lawful warrantless arrest of a person, if the officer has probable cause to make the arrest. (*People v. Johnson* (1970), 45 Ill. 2d 283, 288, 259 N.E.2d 57, 60.) The State is also correct that the scope of a search incident to an arrest extends to the area within defendant's immediate control (*People v. Braden* (1966), 34 Ill. 2d 516, 519, 216 N.E.2d 808, 810) and is not limited to the purpose of searching for weapons. (*People v. Hayes* (1973), 55 Ill. 2d 78, 81, 302 N.E.2d 37, 39.) Probable cause to arrest exists if "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, 230, quoting *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358.) Probable cause must be determined by considering the totality of the evidence and circumstances. (*People v. Moody* (1983), 94 Ill. 2d 1, 8, 445 N.E.2d 275, 278.) Moreover, probable cause to arrest must have existed prior to the search, because it is the validity of the arrest that makes the search proper. Thus, if Walston had probable cause to arrest defendant prior to the search, the search would be valid even though Walston actually arrested defendant shortly after the search. *People v. Jones* (1977), 56 Ill. App. 3d 414, 417, 371 N.E.2d 1093, 1096.

■ Considering the evidence as a whole, we do not believe Walston had probable cause to arrest defendant prior to the search. Therefore, Walston did not have authority to conduct a full search of defendant incident to the arrest. The only facts connecting defendant to the crime prior to Walston's search were that defendant was in the vicinity of the burglary at the time it occurred, that Walston knew defendant was on parole for a prior burglary, and that defendant was

evasive when Walston questioned him about the bundle. Walston had no description of the burglar, and ·he had no other circumstantial evidence to tie defendant to the burglary. Contrary to the State's contention, *Moody* is distinguishable from the case at bar. In *Moody*, the police found blood on a shattered display case at the scene of the burglary. The defendant was found at a hospital a couple miles from the scene of the burglary and was undergoing treatment for a deep laceration to his leg. ( *Moody*, 94 Ill. 2d at 4, 445 N.E.2d at 276.) During questioning at the hospital, defendant said he was assaulted at a nearby tavern, but there were not any reports of a disturbance at the tavern. (*Moody*, 94 Ill. 2d at 8, 445 N.E.2d at 278.) The court held that probable cause existed for the officers to arrest defendant at the hospital. (*Moody*, 94 Ill. 2d at 9, 445 N.E.2d at 279.) The blood found at the scene and defendant's laceration, along with the other circumstances in *Moody*, provided much more of a connection between defendant and the crime than in the case at bar. Consequently, because Walston did not have probable cause to arrest prior to finding the hats, he did not have authority to conduct a full search of defendant.

 ■ Even if a police officer does not have probable cause to arrest and cannot conduct a full search of an individual, the officer may "stop and frisk" that individual if certain conditions are met. Illinois law provides that a police officer

> "may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense *** and may demand the name and address of the person and an explanation of his actions." (Ill. Rev. Stat. 1985, ch. 38, par. 107—14.)

In addition, a police officer may search the person for weapons if the officer "reasonably suspects that he or another is in danger of attack." (Ill. Rev. Stat. 1985, ch. 38, par. 108—1.01.) These Illinois laws codified the holdings in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889. (*People v. McGowan* (1977), 69 Ill. 2d 73, 76-77, 370 N.E.2d 537, 539.) Thus, even though a police officer has reason to stop an individual, the officer may only conduct a search if the officer has reason to believe that the individual is armed and dangerous. (*People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327, 330.) The officer "need only have the reasonable belief that either his safety, or that of others, is in danger"; his belief is not judged by the probable cause test. (*Smithers*, 83 Ill. 2d at 435, 415

N.E. 2d at 330.) Once these conditions are met, the police officer may only conduct a search "limited to the minimum necessary to discover objects capable of use as weapons." *People v. Kantowski* (1983), 98 Ill. 2d 75, 80, 455 N.E.2d 1379, 1381; *People v. Lawson* (1978), 61 Ill. App. 3d 133, 136, 377 N.E.2d 1280, 1282.

■ Defendant argues that the scope of the search of defendant exceeded the minimum necessary to discover weapons, and therefore the evidence—that is, the hats—should have been suppressed. (*Terry*, 392 U.S. at 29, 20 L. Ed. 2d at 910, 88 S. Ct. at 1884.) Defendant asserts that *Terry* only allows a "pat-down" for weapons in any clothing *worn* by the suspect. Because Walston looked *under* clothing the defendant was *holding*, defendant contends that the search exceeded the bounds of *Terry*. *Terry*, however, does not so limit the search. All *Terry* requires is that the search be limited only to what is necessary to discover weapons. *Terry*, 392 U.S. at 29, 20 L. Ed. 2d at 910-11, 88 S. Ct. at 1884.

In *People v. Wilson* (1986), 141 Ill. App. 3d 156, 160, 490 N.E.2d 701, 704, the court held that a police officer's search of defendant's duffel bag for weapons was proper under *Terry*. Defendant had dropped the duffel bag, but it was within his immediate grasp. The court stated that

> "[t]o hold otherwise would subject [the] officers to the possible danger that upon having the duffel bag returned to [the defendant] by the officers when no evidence of a weapon was found on his person, defendant would then produce the weapon from the duffel bag and fire at the officers." (*Wilson*, 141 Ill. App. 3d at 160, 490 N.E.2d at 704.)

(See *People v. Berry* (1977), 54 Ill. App. 3d 647, 370 N.E.2d 26 (search of a jacket thrown to the ground by defendant proper under *Terry*).) The court in *Wilson* also noted that it would be contrary to the tenet of *Terry* to hold that "the contents of a bag which the defendant was carrying and was within his immediate grasp could not be subject to a search if the officers could lawfully search the defendant's person." *Wilson*, 141 Ill. App. 3d at 160, 490 N.E.2d at 704.

Defendant cites *People v. Trice* (1978), 56 Ill. App. 3d 849, 372 N.E.2d 699, and *Sibron* for support. In those cases, the courts limited the search to a "pat-down" because that was all that was necessary to initially detect weapons on the suspect. In *Trice*, the officer searched the coat defendant was carrying and discovered plastic bags containing a soft substance, even though the officer admitted that when he reached into the coat pocket the bags did not feel like weapons. (*Trice*, 56 Ill. App. 3d at 851, 372 N.E.2d at 701.) Likewise, in

*Sibron*, the officer did not conduct an initial pat down, but just reached into defendant's pocket and found an envelope containing heroin. (*Sibron*, 391 U.S. at 65, 20 L. Ed. 2d at 936, 88 S. Ct. at 1904.) The courts in *Trice* and *Sibron* suppressed the evidence because the searches were not reasonably limited to looking for weapons. (*Trice*, 56 Ill. App. 3d at 853, 372 N.E.2d at 702; *Sibron*, 392 U.S. at 65, 20 L. Ed. 2d at 936, 88 S. Ct. at 1904.) Similarly, we find *People v. Galvin* (1987), 161 Ill. App. 3d 190, 514 N.E.2d 2060, and *People v. Bowen* (1987), 164 Ill. App. 3d 164, which defendant cites for authority, to be factually distinguishable from the case at bar and thus not controlling on our decision.

Walston described the bundle in defendant's lap as "large and bulky." Thus, it was large enough to be a weapon. Moreover, because the bundle was in defendant's lap, it was clearly within his grasp, and defendant could have easily pulled a weapon out from under the shirt. In fact, the bundle was much more within defendant's grasp than the duffel bag in *Wilson*. In addition, Walston merely lifted up the shirt to look for the weapon.

Although defendant alleges that Walston was only looking for evidence, we hold that Walston could have had a reasonable belief that defendant was armed. In *People v. Solis* (1985), 135 Ill. App. 3d 991, 995, 482 N.E.2d 207, 210, a search for weapons was proper where the detainee was suspected of burglary, and the officer had not received any information that the individual was armed. It is likely that a person engaged in stealing might be armed "and a police officer need not risk his life by assuming the contrary." (*Solis*, 135 Ill. App. 3d at 995, 482 N.E.2d at 210.) We also hold that the scope of Walston's search was properly within the limits of *Terry*. The bundle in defendant's lap was large enough to be a weapon, it was easily within defendant's reach, and Walston only lifted up the shirt in order to view the bundle underneath. Consequently, Walston's search of defendant did not violate defendant's fourth amendment rights, and the trial court did not err in refusing to suppress the evidence.

██ █ Defendant also contends that his conviction for criminal damage to property should be vacated because it was based on the same act that supported his burglary conviction. Our supreme court has stated:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple con-

victions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the inter-relationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.)

Although defendant entered the building by first breaking the glass door, two separate, although interrelated, acts occurred. Defendant committed criminal damage to property when he broke the glass. (Ill. Rev. Stat. 1985, ch. 38, par. 21–1 (A person commits criminal damage to property when he "[k]nowingly damages any property of another without his consent").) He did not commit burglary until he actually entered the building. (Ill. Rev. Stat. 1985, ch. 38, par. 19–1 ("A person commits burglary when without authority he knowingly enters *** a building").) The information made this distinction when it charged that defendant committed the following offenses:

"Count I

Burglary—Said defendant, without authority, *knowingly entered a building* of Fred Khourie, doing business as Khourie Brother's, located at 815 Commercial Avenue, Cairo, Alexander County, Illinois, with the intent to commit therein a theft.

* * *

Count III

Criminal Damage to Property—In that said defendant *knowingly damaged property* of Fred Khourie, doing business as Khourie Brother's, being a glass door and facing, located at 815 Commercial, Cairo, Alexander County, Illinois, without the consent of Fred Khourie, said damage in excess of $300.00." (Emphasis added.)

Thus, defendant was charged and convicted for two separate acts. See *People v. Vasquez* (1981), 97 Ill. App. 3d 1142, 1143, 424 N.E.2d 42, 43.

Defendant incorrectly relies on *People v. Pearson* (1982), 108 Ill. App. 3d 241, 439 N.E.2d 31, and *People v. Houston* (1986), 151 Ill. App. 3d 718, 502 N.E.2d 1174. In *Pearson,* the court vacated defendant's conviction for criminal damage to property because the conviction was based on the same act that supported defendant's conviction

for reckless conduct. (*Pearson*, 108 Ill. App. 3d at 243, 439 N.E.2d at 33.) Both convictions were based on one act—the breaking of a tavern door window by defendant. (*Pearson*, 108 Ill. App. 3d at 243, 439 N.E.2d at 33.) The court rejected the State's arguments that neither crime was a lesser included offense of the other and that the crimes were different because one crime was against the tavern owner's property and the other crime was against the owner's person. (*Pearson*, 108 Ill. App. 3d at 244, 439 N.E.2d at 33.) In the case at bar, however, we have already noted that defendant performed two separate acts; the State did not just posit two separate theories for one act.

In *Houston*, the court vacated defendant's convictions for theft and battery because those convictions were based on the same act as his conviction for robbery. (*Houston*, 151 Ill. App. 3d at 723, 502 N.E.2d at 1177.) In *Houston*, the information revealed that defendant was charged with theft of the same property on which the robbery charge was based, and he was charged with battery for the same use of force on which the robbery charge was based. (*Houston*, 151 Ill. App. 3d at 722-23, 502 N.E.2d at 1177.) In the case at bar, however, the information charged defendant with two acts—breaking the glass in the door and entering the building. Therefore, we hold that defendant was properly convicted of both burglary and criminal damage to property. See *People v. Fice* (1985), 131 Ill. App. 3d 770, 773, 476 N.E.2d 47, 49 (In dicta, the court stated that defendant's convictions for both burglary and criminal damage to property were proper where defendant entered the victim's home and then threw a log through the patio door to escape).

■ Defendant's third contention is that the trial court erred in crediting him with 15 days, instead of 95 days, against his burglary, theft and criminal damage to property sentences, for the time he served in custody prior to his sentencing. At the time of his arrest, defendant was also on mandatory supervised release for a prior burglary sentence. Defendant was arrested on August 10, 1986, and was sentenced on November 12, 1986. He did not post bond; thus, he was incarcerated for the entire 95 days between his arrest and sentencing. The trial court, however, only gave defendant credit for 15 days. We cannot determine from the record, nor do the parties explain in their briefs, why or how the court set the amount of credit at 15 days. The other 80 days have not been credited against any other sentence.

Bail on the burglary, theft, and criminal damage to property charges was set at defendant's initial appearance on August 11, 1986, the day after the burglary. The record reveals that on this same day,

defendant was put on a parole hold pending a hearing on the revocation of his mandatory supervised release. As of defendant's sentencing, defendant's mandatory supervised release had not yet been revoked. The State contends that because defendant received 15 days credit against the burglary, theft, and criminal damage to property sentences, the other 80 days should properly be credited against the previous burglary sentence upon the revocation of defendant's mandatory supervised release. The State asserts that after defendant's initial appearance, defendant was held in custody for the parole hold on the prior burglary, and not for the other three offenses. This is evident, according to the State, because defendant was held in custody at the Illinois Department of Corrections, and not at the county jail. The State contends that defendant will receive double credit for time served, if we award him the full 95 days of credit here, because the credit could properly be applied to the prior burglary sentence.

The State's argument is without merit. We find *People v. Higgerson* (1987), 157 Ill. App. 3d 564, 510 N.E.2d 574, to be controlling in the case at bar. In *Higgerson,* defendant was arrested on February 16, 1986, for driving while license revoked and driving under the influence of alcohol. Defendant's bond was set at his first appearance in court on March 20, 1986. Also on March 20, 1986, defendant was found guilty of a prior offense of driving while license revoked, and he was sentenced to imprisonment. On July 25, 1986, defendant was sentenced to imprisonment for the second driving while license revoked offense. The State in *Higgerson* posed the same argument that it now poses in the case at bar; namely, that the credit should be applied to the earlier sentence. In both cases, defendant was simultaneously in custody for two separate offenses. The *Higgerson* court noted with approval the case of *People v. Arnhold* (1987), 115 Ill. 2d 379, 504 N.E.2d 100:

> "Our supreme court [in *Arnhold*] concluded that a defendant who is out on bond on one charge, and who is subsequently rearrested and returned to custody on another charge, is not returned to custody on the first charge until his bond is withdrawn or revoked. Thus, *** defendant in the case at bar was in custody due to his failure to post bond, the same as a defendant would be who has had his bond withdrawn or revoked." (*Higgerson,* 157 Ill. App. 3d at 567, 510 N.E.2d at 576.)

The *Higgerson* court held that defendant was entitled to apply against his latter sentence the 128 days of credit between his first appearance and sentencing.

Based on *Higgerson* and *Arnhold*, we hold that defendant in the case at bar is entitled to the full 95 days of credit against his burglary, theft, and criminal damage to property sentences. The court in *Higgerson* allowed defendant to receive credit for the latter offense for the time he was simultaneously in custody for both offenses. Defendant in the case at bar was clearly in custody for two offenses. We decline to adopt the State's rationale that defendant was in custody for only one offense because he was held in one type of facility (Department of Corrections) as opposed to another (county jail), and we cannot find any authority to support such a proposition. Consequently, the State's argument in the case at bar that the credit must be split between the two offenses is without support. The State is correct that a defendant is only allowed credit "for time spent in custody as a result of the offense for which the sentence was imposed." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—7(b).) Defendant, however, was in custody for the burglary, theft, and criminal damage to property offenses (as well as the prior burglary because of the parole hold) and thus should have properly received credit against that sentence for the time he served.

We do not find *Jackson v. Fairman* (1981), 94 Ill. App. 3d 131, 418 N.E.2d 200, to be contrary to this reasoning. In *Jackson*, defendant was arrested for theft while on mandatory supervised release. Defendant was given credit against the theft for the time he spent in custody between his arrest and sentencing on the theft offense. Several months after his sentencing for theft, defendant's mandatory supervised release was revoked. Defendant sought credit against the revocation of his mandatory supervised release for the time he was incarcerated between his sentencing for theft and the revocation of his mandatory supervised release. The State argued· in *Jackson*, as it did in *Higgerson*, that defendant was not entitled to the credit because he was incarcerated on the theft offense and therefore the time was being credited against the theft sentence. The court rejected the State's argument and held that defendant was entitled to the credit. (*Jackson*, 94 Ill. App. 3d at 133, 418 N.E.2d at 202.) Thus, *Jackson*, like *Higgerson*, mandates that defendant in the case at bar receive 95 days of credit against his burglary, theft, and criminal damage to property sentences. As in *Jackson*, defendant here was in custody for two separate offenses and the time he served was not yet credited against either sentence.

The State in the case at bar points out that the defendant in *Jackson* received credit against the theft offense for the time he served prior to sentencing, but received credit against the revocation of his

mandatory supervised release for the time he served between his sentencing and the revocation. The State, therefore, concludes that defendant in the case at bar should have to split the application of his credit between the burglary offense and the revocation of his mandatory supervised release. *Jackson*, however, does not require that result. In *Jackson*, defendant had already received credit for the time he served prior to sentencing. Thus, the only issue was whether he could receive credit towards the revocation of his mandatory supervised release for the time he served between his theft sentencing and the revocation. In the case at bar, defendant's entire 95 days of confinement, which he incurred *prior* to sentencing, have not been applied to either sentence. Thus, *Jackson*, in fact, supports defendant's position because the court in *Jackson* credited defendant's theft sentence with the time he was in custody between his arrest and sentencing. We, therefore, reverse the trial court's order and remand this cause with directions to apply 95 days of credit against defendant's burglary, theft, and criminal damage to property sentences.

■ Defendant finally argues that he is entitled to have his fine to the Violent Crime Victims Assistance Fund reduced from $25 to $20, because he was not convicted of a violent crime. (Ill. Rev. Stat. 1985, ch. 70, par. 510(c).) The State concedes this issue in its brief. Thus, upon remand, the trial court is instructed to modify defendant's fine to $20.

Accordingly, the judgment of the circuit court of Alexander County is reversed and the cause is remanded with instructions to credit defendant's sentences for burglary, theft, and criminal damage to property for the time he was incarcerated between August 10, 1986, and November 12, 1986, and to modify defendant's fine to the Violent Crime Victims Assistance Fund to $20. The judgment is affirmed in all other respects.

Affirmed in part; reversed in part and remanded with directions.

LEWIS, J., concurs.

JUSTICE KARNS, specially concurring:

While I concur in the judgment of the court and agree that the stop and frisk was fully justified as a *Terry* stop, I believe that the unusual facts present here supplied probable cause for a warrantless arrest of defendant and the attendant search was incident to a lawful arrest.

Defendant, on parole from a prior burglary conviction, a fact

known to Officer Walston, was seen riding a bicycle, in the rain, at 4:30 in the morning one block from a store that was burglarized a short time later. When Walston observed defendant four or five blocks from the store, he was on his bicycle, shirtless, carrying something large and bulky on his lap, covered by his shirt; although when seen earlier he was wearing a dark-colored shirt.

Had Officer Walston failed to arrest defendant under those circumstances, he could well have been disciplined for dereliction of duty as a police officer.