THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THOMAS RICHARD CHRISTENSEN, Defendant-Appellant.

Fourth District   No. 4—89—0789

Opinion filed May 31, 1990.

Gary G. Johnson, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and James W. Ackerman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a bench trial, defendant Thomas Christensen was found guilty of unlawful possession of a controlled substance. Prior to trial, defendant's motion to suppress the evidence obtained on September 3, 1987, after the car defendant was a passenger in was stopped by officers from the Normal police department, was denied. On appeal, defendant argues the trial court erred in finding the stop and search of defendant was proper under sections 107—14 and 108—1.01 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, pars. 107—14, 108—1.01). We affirm.

The facts are undisputed. The arresting officer, James Lutes, testified at the suppression hearing that he and his partner were assigned to the party shift (6 p.m. to 4 a.m.) on September 3, 1987,

when they were called at 10:30 p.m. to investigate a complaint about a fight in an apartment complex off Walnut Street in Normal. Two of the individuals involved in the fight were described as white males wearing leather jackets. At approximately 10:38 p.m., Lutes testified he and his partner were driving westbound on Phoenix Street in Normal when they observed the defendant and another man walking down the driveway of the apartment complex where the fight complaint arose. Both were wearing black jackets which appeared to be leather. Lutes and his partner drove by the two men and pulled off to the side of the street to observe the two men. Lutes testified the men got into a Ford Bronco parked east of them on Phoenix but did not start the ignition or turn on the lights. After observing the two men for a short time, the officers turned their squad car around and drove toward the Bronco.

Lutes testified his partner pulled the squad car up behind the Bronco on Phoenix. Both officers got out and approached the driver and passenger sides of the Bronco simultaneously. Lutes testified the defendant was sitting in the passenger seat and the window was rolled down. Lutes testified after he asked defendant for some ID, the defendant reached into his pockets and, as defendant pulled his hand out of the pocket, defendant said "he didn't have nothing." Lutes testified he noticed a little cellophane bag come out of defendant's pocket. As defendant was "fumbling in his pockets," and attempting to push the bag back into the pocket, Lutes asked him, "What do you have there?" After Lutes told defendant to pull his hand out of his pocket, Lutes reached over and pulled out the bag from defendant's pocket. Lutes testified he was not sure how big the cellophane bag was and, because he thought defendant had a knife or gun in his pocket, he pulled the bag out.

The evidence does not clearly show whether the cellophane bag was removed from a pocket in defendant's jacket or pants. After removing the bag, Lutes determined it contained illegal drugs. Defendant was then arrested for unlawful possession of a controlled substance. It was determined the bag contained lysergic acid diethylamide (LSD) and psilocybin.

Lutes' partner, J.D. Clingon, testified similarly. Clingon testified the two men in the Bronco looked suspicious because they matched the description of the two men reportedly involved in the fight and because they got into the truck and just sat there without moving. After a few minutes, Clingon stated he and his partner decided to go back to check out what was going on. They pulled up behind the Bronco, shined a light on the truck, and got out to approach on foot.

Clingon testified the two men did not attempt to flee the truck as they approached.

The trial court denied the motion to suppress. The court reasoned the stop was proper under section 107—14 of the Code and the seizure of the bag was proper under the standards announced in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Following a trial, defendant was found guilty of possession and sentenced to 30 months' probation.

Defendant argues the initial stop was not proper under *Terry* because defendant's conduct was not unusual and, therefore, could not lead the officers to conclude criminal activity was afoot. Defendant further argues that even if the stop was proper, the search violated the fourth amendment guarantees against unreasonable searches and seizures because there was no evidence to support a conclusion that defendant was armed and dangerous. Additionally, defendant contends even if the officer could have concluded defendant was armed and dangerous, a search authorized by *Terry* is a "pat-down" search and not one where items may be seized from inside a suspect's clothing.

■■■ We first address whether the stop was proper under *Terry*. In *Terry*, the Supreme Court held an investigatory stop is justified if the police officer can point to specific and articulable facts which reasonably warrant an intrusion. The holdings in *Terry* and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, were codified in sections 107—14 and 108—1.01 of the Code. Section 107—14 provides:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.)

When examining the conduct of law-enforcement officials, the facts of each case are judged against an objective standard. That is, would a person of reasonable caution, knowing the facts the officer had available at the time of the seizure or stop, believe the action taken was appropriate? (*Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.) A motion to suppress evidence attacks the validity of police

conduct in seizing and searching a defendant. (Ill. Rev. Stat. 1987, ch. 38, par. 114—12.) A reviewing court will not disturb the trial court's ruling on a motion to suppress unless it is against the manifest weight of the evidence. *People v. Hubbard* (1988), 170 Ill. App. 3d 572, 524 N.E.2d 1263.

■■ The evidence shows that Officer Lutes and his partner were on Phoenix Street to investigate a complaint of a fight. The defendant and his companion were seen walking in the area of the fight and matched the description of the two persons allegedly involved. Defendant and his companion were acting suspiciously. The circumstances presented specific and articulable facts for the officers to stop defendant. The case defendant relies on, *People v. Schlottman* (1976), 37 Ill. App. 3d 62, 344 N.E.2d 8, is distinguishable. There, police investigating a "pot" party stopped a car driving slowly toward the site of the party. Because the officers had no specific facts tying the car occupants to the party, the court found the stop was improper. In the case presented, we conclude the trial court's determination that the stop was proper is supported by the evidence. See *People v. Hall* (1980), 90 Ill. App. 3d 1073, 414 N.E.2d 201, *cert. denied* (1981), 454 U.S. 893, 70 L. Ed. 2d 207, 102 S. Ct. 388.

■■ Defendant next contends the search was illegal under *Terry* and *Sibron*. After a stop, a search for weapons may be conducted if the officer has reason to believe he is dealing with an armed and dangerous individual. (Ill. Rev. Stat. 1987, ch. 38, par. 108—1.01; *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) The determination of whether an officer acted reasonably is based on an objective standard which takes into account the specific reasonable inferences the officer is entitled to draw from the facts in light of his experience. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) Even though, as in the case presented, the temporary stop of a defendant is proper, the right to frisk or search a defendant must be separately determined. *People v. Galvin* (1989), 127 Ill. 2d 153, 165, 535 N.E.2d 837, 842.

■■ We disagree with defendant's summary of the evidence on this issue. Officer Lutes testified he approached the passenger side of the Bronco and asked the defendant for some identification. As defendant pulled his hand out of his pocket, defendant said he had no identification. Lutes then noticed a portion of a cellophane bag protruding from the pocket. Lutes testified defendant was fumbling in his pockets and, because Lutes did not know at that time whether defendant had a knife or a gun in his pocket, Lutes reached over to pull the bag out of defendant's pocket. This case is unlike *Ybarra v.*

*Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338, where the defendant made no attempt to conceal contraband and did not act in any way suspicious. This case is also unlike *Galvin,* where the officer provided *no* articulable facts to justify a pat-down search of the defendant, but merely provided an affirmative response to a question at trial on whether he searched defendant to protect his safety. We conclude that Lutes provided specific and articulable facts—defendant's fumbling in his pocket and Lutes' fear that defendant may have a weapon—to justify a search for weapons. We further find his belief that defendant may have had a weapon was reasonable.

■ Defendant raises a final issue on the manner in which the search was executed. Defendant maintains *Terry* and *Sibron* direct that a pat-down search must be conducted before intrusion into a defendant's clothing is authorized. Consideration of this issue requires a review of the language used in *Terry.* In *Terry,* the Supreme Court noted the scope of a search "must be 'strictly tied to and justified by' the circumstances which rendered its initiation." (*Terry,* 392 U.S. at 19, 20 L. Ed. 2d at 904, 88 S. Ct. at 1878, quoting *Warden v. Hayden* (1967), 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642, 1652 (Fortas, J., concurring).) Further, the *Terry* Court stated a search for weapons must be strictly circumscribed by the exigencies which justify its initiation. (*Terry,* 392 U.S. at 25-26, 20 L. Ed. 2d at 908, 88 S. Ct. at 1882.) In *Terry,* the pat-down search there was determined to be proper because it was limited to what was minimally necessary under the circumstances. *Terry* did not hold that a pat-down search was the *only* means of searching for weapons.

Defendant relies principally on *People v. Trice* (1978), 56 Ill. App. 3d 849, 372 N.E.2d 699, which in turn relied on *Sibron.* In *Trice,* police, acting on information from an informant that the defendants were in possession of heroin, approached the defendants and a third party and searched the pocket of a coat the third party was carrying over her arm. The officer in *Trice* testified he was looking for narcotics. The appellate court in *Trice,* quoting *Sibron,* affirmed the trial court's order suppressing the evidence on the basis that the search was not limited in scope to a pat-down search for weapons. We find these cases distinguishable. Both *Sibron* and *Trice* involved a scenario where officers were looking for drugs and there was no evidence that the officers' safety was in danger. In both cases, the issue was whether a search for weapons could be conducted and not whether a pat-down search for weapons must be conducted.

■ Turning to the case before us, Lutes testified he believed his safety was in danger because the defendant was fumbling in his

pocket. The search Lutes conducted consisted of reaching into the same pocket and pulling out its contents. The rest of defendant's clothing was not searched. *Terry* did not limit a search for weapons to a pat-down search, and the limited search conducted here was proper under the circumstances of this case.

For the foregoing reasons, the order denying the motion to suppress is affirmed and defendant's conviction and sentence for possession are affirmed.

Affirmed.

LUND and GREEN, JJ., concur.