■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v

JOSE PEROLTA-RUA, Respondent.

At the suppression hearing, the arresting officer testified that he participated in at least 600 drug investigations and at least 500 drug arrests. On October 27, 1990, at about 5:15 P.M., he and his partner, in uniform and in a marked vehicle, were patrolling the near west side of Syracuse. He observed defendant standing in front of a restaurant, which is a "known location where drugs are sold and bought." The officer knew defendant had been arrested before on drug possession charges. Defendant was "thumbing through" what the officer described as a "large bundle" of money. Defendant then got on a bicycle and visited three different apartment buildings, staying only three or four minutes at each location. All three locations were targets of drug investigations. The officer knew that search warrants executed in different apartments in two of the buildings had yielded cocaine.

After he exited the third building and was riding away, defendant looked over his shoulder and observed the police car. Defendant then took something from his right coat pocket and put it down the front of his pants. Having concluded that defendant's actions were consistent with the actions of someone who is dealing in illegal drugs on the street, the officers pulled alongside defendant and asked him to stop. The arresting officer stated that he intended to question defendant about the nature of his conduct. The officer testified that he approached defendant and, for his own safety, conducted a frisk. He felt a hard, "pointy" object in defendant's left pants pocket. He reached in and removed a knife. He continued the frisk and felt a "hard bulky object" about the size of a baseball in the front of defendant's pants. The officer believed the object was a handgun, so he reached into defendant's pants and recovered two large, plastic, dark-colored bags from the front of defendant's underwear. The bags contained several small, plastic, knotted baggies, each of which contained cocaine.

If a police officer has reasonable suspicion to believe that a person has committed a crime, the officer may stop that

person to obtain an explanation of that person's conduct (CPL 140.50 [1]; *People v De Bour,* 40 NY2d 210, 223). "A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed" *(People v De Bour, supra,* at 223; CPL 140.50 [3]). A protective frisk must be confined to the type of intrusion designed to discover weapons, which generally takes the form of a frisk of the person's outer clothing to determine the existence of a weapon. "Once that limited intrusion fails to reveal a weapon and the basis for the officer's fear for his safety has therefore abated, the search must stop" *(People v Robinson,* 125 AD2d 259, 261, *appeal dismissed* 69 NY2d 1014; *see also, People v Roth,* 66 NY2d 688, 690).

We conclude that, in light of the officer's experience, his observations provided him with reasonable suspicion to believe that defendant was engaged in illegal drug activity sufficient to stop him and ask him for an explanation of his behavior. We further conclude that the officer had a reasonable ground to fear for his safety under these circumstances to justify his conducting a frisk of defendant. The knowledge of this experienced officer that drug dealers often carry weapons *(see, People v Mateo,* 122 AD2d 229, 231, *lv denied* 69 NY2d 952), coupled with the fact that defendant moved an object from his pocket to the front of his pants when he saw the police car, provided the officer with a reasonable suspicion of danger *(see, People v Gooden,* 111 AD2d 871, 872). As the Court of Appeals noted in *People v Benjamin* (51 NY2d 267, 271), an officer is not expected "to await the glint of steel before he can act to preserve his safety."

The officer testified that, during the frisk, he felt a hard, bulky object in defendant's pants, which he believed was a handgun. Defendant argues that this testimony is incredible as a matter of law because a police officer could not mistake the feel of plastic bags of cocaine for a gun *(see, People v Robinson, supra,* at 262). However, in light of the officer's testimony that the object was hard and bulky and that he could not be sure what it was from its feel, we conclude that the officer justifiably feared that the object could be a handgun. (Appeal from Order of Onondaga County Court, Mulroy, J.—Suppress Evidence.) Present—Denman, P. J., Doerr, Boomer, Pine and Balio, JJ.