THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,· v. LUIS RIVERA, Defendant-Appellant.

First District (1st Division)   No. 1—93—2507

Opinion filed May 1, 1995.

Rita A. Fry, Public Defender, of Chicago (Robert D. Glick, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Andrea Bonin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant was charged with possession of a controlled substance in violation of section 402(c) of the Illinois Controlled Substance Act (Ill. Rev. Stat. 1989, ch. 56$^{1}$/2, par. 1402(c) (now 720 ILCS 570/402 (West 1992))). The trial court denied defendant's motion to suppress evidence and after a bench trial found defendant guilty. Defendant appeals the denial of the motion to suppress, alleging the stop and frisk were invalid under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

At the hearing on defendant's motion to suppress and at trial, Officer Terry presented the only evidence concerning the events of February 8, 1993, resulting in defendant's arrest and conviction. Officer Terry testified that at about 2:50 p.m. he and his partner were in an unmarked police car near Western and Augusta when they monitored a "C.O.S." call. The broadcast stated that two male Hispanics were selling drugs at 901 North Francisco. It gave the following descriptions: one individual was wearing a Charlotte's, powder blue and purple long coat jacket and the other individual was wearing a black and red waist-length Bulls jacket. Officer Terry acknowledged that these jackets were common in the area. On cross-examination, Officer Terry stated that the broadcast provided no other description and that he was unaware of the source of the information or its reliability.

After hearing the broadcast, the officers headed toward the scene. On their way, a beat car broadcast the same description and relayed that the two individuals had left the scene and were heading eastbound on Augusta. The officers were heading westbound on Augusta approximately one block away from Francisco. At 2808 West Augusta, the officers observed two individuals who fit the broadcast description. Officer Terry did not see anyone else in the area dressed similarly.

The officers told the two individuals to stop, which they did. The officers exited their car and approached the suspects. As they approached, the officers announced their office and advised the suspects of the drug sale allegation. The police noticed that the suspects'

jackets were zipped up. According to Officer Terry, because "sometimes normally in narcotics arrests, subjects have been known to carry weapons," they asked the suspects to unzip their coats. The suspects did so voluntarily. Officer Terry testified that at no time did the suspects threaten the officers.

When the suspects unzipped their coats, the officers observed plastic bags protruding from each of their waistbands. Officer Terry testified that he believed the bags contained narcotics. He had made hundreds of narcotic arrests and was familiar with how cocaine was packaged: usually wrapped in small plastic bags. The officer removed the bags from the suspects' waistbands. After extracting the bags, he could see the contents which he believed to be cocaine.

Following Officer Terry's testimony, defendant moved to suppress the evidence, arguing that the stop, frisk, and seizure were improper under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The trial court denied the motion finding that given the nature of the drug trade and the officer's experience, it was proper for them, in securing their own safety, to determine whether the suspects were armed. The court further found that asking the suspects to unzip their jackets was reasonable. When the officers observed the bags at this time, the evidence was in plain view and the officers were entitled to seize it.

The only issue is whether the trial court erred when it denied defendant's motion to suppress. Defendant contends that both the stop and frisk were invalid under *Terry*. The court will not overturn the trial court's decision on a motion to suppress unless it finds the decision manifestly erroneous. (*People v. Turnage* (1994), 162 Ill. 2d 299, 305, 642 N.E.2d 1235, 1238.) Defendant has the burden of proving the unlawfulness of a stop and frisk on a motion to suppress. *In re M.N.* (1994), 268 Ill. App. 3d 893, 897, 645 N.E.2d 499, 503.

■ In *Terry*, the United States Supreme Court held that under appropriate circumstances an officer may approach a person and briefly stop and detain him or her, without probable cause, to investigate possible criminal activity. To justify the stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." (*Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.) Illinois has codified a *Terry* stop in section 107—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107—14 (West 1992)). The court employs an objective standard to determine whether the stop was reasonable (*People v. Scott* (1992), 148 Ill. 2d 479, 503, 594 N.E.2d 217, 225, *cert. denied* (1993), ___ U.S. ___, 123 L. Ed. 2d 156, 113 S. Ct. 1590): would a person of reasonable caution believe the action

taken was proper knowing the facts available at the time of the stop. (*People v. Christensen* (1990), 198 Ill. App. 3d 168, 171, 555 N.E.2d 746, 748.) The facts must justify more than a mere hunch. *People v. Ware* (1994), 264 Ill. App. 3d 650, 654, 636 N.E.2d 1007, 1009, *appeal denied* (1994), 157 Ill. 2d 519, 642 N.E.2d 1299.

The same analysis applies to the frisk authorized by *Terry*. Section 108—1.01 (725 ILCS 5/108—1.01 (West 1992)) codifies this portion of *Terry*'s holding. The right to frisk does not automatically ensue from a legally justified *Terry* stop. (*People v. Galvin* (1989), 127 Ill. 2d 153, 165, 535 N.E.2d 837, 842.) The police must have a reasonable belief that his or her safety or the safety of others is in danger before a frisk may be conducted. (*People v. Cleaves* (1988), 169 Ill. App. 3d 252, 256, 523 N.E.2d 720, 722.) Although the officer need not be absolutely positive an individual is armed, the belief that one is armed must be reasonable, taking into account the reasonable inferences police are entitled to draw from the facts in light of their experience. (*Christensen*, 198 Ill. App. 3d at 172, 555 N.E.2d at 748; see also *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *Galvin*, 127 Ill. 2d at 163, 535 N.E.2d at 841.) Once a reasonable belief of danger arises, an officer may conduct a search "limited to the *minimum necessary* to discover objects capable of use as weapons." (Emphasis added.) (*Cleaves*, 169 Ill. App. 3d at 257, 523 N.E.2d at 722.) Under *Terry*, the question whether a stop is valid is distinct from the question whether a frisk is valid. The court must address each issue separately.

Defendant argues that the officers lacked sufficient grounds to stop him. The fact that they were wearing the same type of jackets that the alleged drug sellers were wearing fails to corroborate the anonymous tip broadcast. Defendant was not acting suspiciously when the police detained him and was simply walking down the street. Therefore, the facts were not legally sufficient to justify the stop.

In *People v. Gilbert* (1990), 194 Ill. App. 3d 184, 550 N.E.2d 1183, *appeal denied* (1990), 132 Ill. 2d 549, 555 N.E.2d 380, the appellate court held a stop justified under *Terry*; the police had specific and articulable facts from which they could conclude that the three men stopped were perpetrators of the crime. The officers received a radio message concerning a shooting. A second message described three black males, one 5 feet 9 inches, 160 pounds, short hair, dark skin and wearing a black jacket. It also gave the men's direction of flight. The officers saw three men about 20 to 30 minutes later on 51st and Wood, approximately three blocks from the scene. The three men were the only ones on the street. One of them was tall, had short

hair, dark skin, and a black jacket. According to the court, the police had "ample facts" to support the stop. The men were observed in the vicinity of the crime, within a short time of its occurrence, they fit the general description, and one fit the specific description.

In *People v. McGee* (1987), 165 Ill. App. 3d 833, 520 N.E.2d 836, the *Terry* stop of defendant was proper. A radio dispatch described the perpetrators as two black men, one wearing a black leather coat. The officers observed two black men, one wearing a black leather coat, one block east and one-half block south of the scene within three minutes of the broadcast. The men were stopped. According to the court, the police had the "minimum" articulable suspicion required by *Terry* for the stop. *McGee*, 165 Ill. App. 3d at 838, 520 N.E.2d at 839.

■ We conclude that the police had the minimal articulable suspicion required to stop defendant. Reasonable suspicion can be derived in part when police observe individuals similar to those believed fleeing from a recent crime scene when the observed individuals are located in the general area where the fleeing suspects would be expected to be, given the time of the crime and the distance from the crime scene. (*People v. Perez* (1993), 249 Ill. App. 3d 912, 917, 619 N.E.2d 887, 891.) In the case before us, the police observed defendant and a companion approximately one block north and one block east of the scene presumably within a short period of time. The arresting officers saw the two individuals after a dispatch stated that the individuals had left the scene and were proceeding eastbound on Augusta in the direction of the arresting officers. The individuals fit the description broadcast. They were very near the scene and were the only individuals on the street dressed in the described manner. The facts before us are, at the least, comparable to those in *McGee*. Therefore, the stop of defendant was proper.

Defendant further argues that the officers had no justification to ask him to open his jacket because he made no threat or threatening movements. The State alleges that the officers' actions did not amount to a frisk. According to it, a pat-down would have been more intrusive yet justified by the facts available to the officers.

The crucial issue is whether an officer's statement or belief that "narcotic arrests often or sometimes or always involve weapons" is sufficient to automatically justify a frisk.

The protection afforded under the fourth amendment balances the public interest in controlling crime and effective law enforcement with an individual's right to be free from unreasonable search and seizures. (*United States v. Mendenhall* (1980), 446 U.S. 544, 565-66, 64 L. Ed. 2d 497, 517, 100 S. Ct. 1870, 1883; *United States v. Montoya de*

*Hernandez* (1985), 473 U.S. 531, 537, 87 L. Ed. 2d 381, 388, 105 S. Ct. 3304, 3308.) *Terry* created an exception to the probable cause requirement because the Court was concerned with officer safety during street encounters and with the need to prevent crime. Since *Terry*, the United States Supreme Court has relaxed the standard announced therein and afforded officers greater latitude, particularly in drug cases, in an effort to provide them greater protection. *Alabama v. White* (1990), 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412; see also *United States v. Sokolow* (1989), 490 U.S. 1, 10, 104 L. Ed. 2d 1, 12, 109 S. Ct. 1581, 1587 (although not explicitly holding profile match sufficient to constitute reasonable suspicion, Court upheld stop of defendant knowing the officer relied on a profile to justify stop); *Florida v. Royer* (1983), 460 U.S. 491, 507-08, 75 L. Ed. 2d 229, 243, 103 S. Ct. 1319, 1329 (stop legal despite officer's reasonable suspicion based on defendant's fitting profile rather than on facts specific to defendant); *United States v. Cortez* (1981), 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695 (reasonable suspicion may be based on "consideration of the modes or patterns of operation of certain kinds of lawbreakers"; evidence is to be weighed from trained law-enforcement point of view rather than from scholarly view).

In *Terry*, Justice Harlan in his concurrence articulated his belief that the very nature of some crimes may warrant an officer to suspect an individual is armed and, therefore, give him or her the right to automatically frisk the suspect. He stated, the "right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence." (*Terry*, 392 U.S. at 33, 20 L. Ed. 2d at 913, 88 S. Ct. at 1886.) Other jurisdictions have followed this line of reasoning and have held that an automatic search may flow directly from violent crimes or where police have specific and objective credible reason to believe, before stopping a suspect, that he or she is armed. See, *e.g.*, *State v. Thomas* (1988), 110 N.J. 673, 680, 542 A.2d 912, 916 (citing examples and cases).

Professor LaFave states:

> "It is undoubtedly true, however, that in some cases the right to conduct a protective search must follow directly from the right to stop the suspect. *** *Lower courts have been inclined to view the right to frisk as being 'automatic' whenever the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed ***. This includes such suspected offenses as *** dealing in large quantities of narcotics.*" (Emphasis added.) (3 W. LaFave, Search & Seizure § 9.4(a), at 505-06 (2d ed. 1987).)

Professor LaFave notes, however, that an officer generally does not

have an automatic right to search an individual trafficking in small quantities of drugs; other factors must be present to justify reasonable suspicion.

A majority of the courts in other jurisdictions, although stating police are justified in conducting a frisk based on their belief that drug dealers carry weapons, have recounted other specific circumstances present in the record that provided the requisite reasonable suspicion.[1] The circumstances in *State v. Thomas* (1988), 110 N.J. 673, 542 A.2d 912, are analogous to the case before us and are instructive on the issue of automatic frisks. In *Thomas*, the court found defendant's frisk unjustified. The situation the police were presented with did not authorize an automatic frisk because the anonymous tip simply stated that the suspect was in possession of an unidentified drug. The police had no information that defendant was armed nor did they know whether defendant had been armed at the time of his

---

[1]See, *e.g.*, United States v. Vaughn (D.C. Cir. April 1, 1994), No. 93—3061 (unpublished opinion); *United States v. Wangler* (5th Cir. 1993), 987 F.2d 228, 231; *United States v. Sinclair* (4th Cir. 1993), 983 F.2d 598, 600, 603; *United States v. Salazar* (2d Cir. 1991), 945 F.2d 47, 51, *cert. denied* (1992), 504 U.S. 923, 118 L. Ed. 2d 574, 112 S. Ct. 1975; *United States v. Alexander* (2d Cir. 1990), 907 F.2d 269, 273, *cert. denied* (1991), 498 U.S. 1095, 112 L. Ed. 2d 1067, 111 S. Ct. 983; *United States v. Salas* (9th Cir. 1989), 879 F.2d 530, 535, *cert. denied* (1989), 493 U.S. 979, 107 L. Ed. 2d 509, 110 S. Ct. 507; *United States v. Gilliard* (1st Cir. 1988), 847 F.2d 21, 25, *cert. denied* (1989), 488 U.S. 1033, 102 L. Ed. 2d 978, 109 S. Ct. 846; *United States v. Trullo* (1st Cir. 1987), 809 F.2d 108, *cert. denied* (1987), 482 U.S. 916, 96 L. Ed. 2d 679, 107 S. Ct. 3191; *United States v. Pajari* (8th Cir. 1983), 715 F.2d 1378; *United States v. Post* (9th Cir. 1979), 607 F.2d 847, 851; *United States v. Oates* (2d Cir. 1977), 560 F.2d 45, 62; *United States v. Santana* (2d Cir. 1973), 485 F.2d 365, 368, *cert. denied* (1974), 415 U.S. 931, 39 L. Ed. 2d 490, 94 S. Ct. 1444; *United States v. Mitchell* (N.D. Miss. 1993), 832 F. Supp. 1073, 1074-75; *People v. Limon* (1993), 17 Cal. App. 4th 524, 535, 21 Cal. Rptr. 2d 397, 402; *People v. Lee* (1987), 194 Cal. App. 3d 975, 977, 240 Cal. Rptr. 32, 36; *State v. Butler* (1992), 331 N.C. 227, 232-33, 415 S.E.2d 719, 722; *State v. Valentine* (1994), 134 N.J. 536, 554, 636 A.2d 505, 514; *State v. Cobbs* (1985), 103 N.M. 623, 711 P.2d 900; *People v. Perolta-Rua* (1992), 579 N.Y.S.2d 283, 285, 179 A.D.2d 1051, 1053; *State v. Woodruff* (Ohio Ct. App. July 15, 1992), No. 2874; *State v. Debrill* (Ohio Ct. App. December 3, 1992), No. 13270; *State v. Guy* (1992), 172 Wis. 2d 86, 97-98, 492 N.W.2d 311, 315-16, *cert. denied* (1993), 509 U.S. 914, 125 L. Ed. 2d 709, 113 S. Ct. 3020; *State v. Schladweiler* (Wis. Ct. App. December 28, 1994), No. 94—2142—CR; *State v. Richardson* (1990), 156 Wis. 2d 128, 143, 456 N.W.2d 830, 836. But see *United States v. Bellamy* (D.C. Ct. App. 1993), 619 A.2d 515, 522; *Harris v. State* (Tex. Ct. App. 1992), 827 S.W.2d 49, 51; *State v. White* (Utah Ct. App. 1993), 856 P.2d 656, 662.

previous arrest. The trial court's acceptance of the officer's general belief that drug suspects might be armed was not reasonable. The record contained no evidence that defendant was a drug dealer or that the officer had a reasonable basis for believing that defendant was a drug dealer. There was no evidence that the area in which defendant was stopped was a high crime area known for drug dealing. Although the court did not set forth a *per se* rule that a pat-down may never be justified by the mere fact that a suspect is in possession of illegal drugs, the record before it did not contain sufficient evidence of objective criteria to establish reasonable suspicion that the suspect was armed. A police officer's generalized statements or subjective impressions were not sufficient.

Although authority from other jurisdictions is not binding on us, it supports a conclusion that *Terry* requires more than a generalized belief or statement that narcotic dealers may carry weapons. Further support for this proposition can be found in the case of *People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837, in which the Illinois Supreme Court refused to apply a *per se* rule that every time a burglary suspect is lawfully stopped, a legal presumption exists that he or she is armed and dangerous. According to the court, "[e]ach case must stand or fall on its own set of concrete facts." (*Galvin*, 127 Ill. 2d at 174, 535 N.E.2d at 846.) In *Galvin*, the police at no time articulated any specific fact that would lead a reasonable person to believe danger existed either to the officer or others. The officer did not testify that he believed defendant was armed or dangerous and in fact admitted that he was not threatened by defendant. Therefore, the court found the frisk improper.

■ We find that the mere fact that an officer believes drug dealers carry weapons or narcotic arrests involve weapons is insufficient alone to support reasonable suspicion to justify a *Terry* frisk.

The record in the case before us demonstrates that the officers frisked defendant based only on the fact that they suspected he was involved in a drug transaction and because of this, he may have been armed. The officers did not observe the alleged transaction. They had no reasonable suspicion that defendant was a drug dealer. Defendant did not attempt to avoid the officers or flee. Defendant made no sudden or unexplainable movements, nor did Officer Terry testify that defendant acted nervous, scared, or jittery. Defendant's hands were not hidden nor did he attempt to hide them.

The trial court's decision denying defendant's motion to suppress was manifestly erroneous because the officers did not have reasonable suspicion to frisk defendant.

Defendant finally argues that the scope of the search exceeded

that authorized by *Terry*. According to him, a pat-down must be conducted before police may intrude into clothing. In *Christensen*, the court rejected this argument. First, the language of *Terry* states that a pat-down is not necessarily required. Instead, the frisk " 'must be "strictly tied to and justified by" the circumstances which rendered its initiation.' " (*People v. Christensen* (1990), 198 Ill. App. 3d 168, 173, 555 N.E.2d 746, 749, quoting *Terry*, 392 U.S. at 19, 20 L. Ed. 2d at 904, 88 S. Ct. at 1878, quoting *Warden v. Hayden* (1967), 387 U.S. 294, 310, 18 L. Ed. 2d 782, 794, 87 S. Ct. 1642, 1652 (Fortas, J., concurring).) "*Terry* did not hold that a pat-down search was the *only* means of searching for weapons." (Emphasis in original.) *Christensen*, 198 Ill. App. 3d at 173, 555 N.E.2d at 749.

●4 We further find that requiring defendant to unzip his jacket constituted a search which exceeded the scope authorized by *Terry*. Defendant had no alternative but to follow the police orders; he submitted to their authority. Therefore, the evidence was illegally seized and must be suppressed.

For the foregoing reasons, the ruling of the circuit court denying defendant's motion to suppress was manifestly erroneous. The order of the circuit court is reversed.

Reversed.

CAMPBELL, P.J., and WOLFSON, J., concur.