SECOND DIVISION
 MARCH 18, 1997

1-96-0094

THE PEOPLE OF THE STATE OF ILLINOIS,

 Plaintiff-Appellee,

 v.

SAM WARDLOW,

 Defendant-Appellant.
) Appeal from the
) Circuit Court of
) Cook County.
)
) No. 95 CR 26952
)
) The Honorable
) Fred Suria,
) Judge Presiding.
 JUSTICE DiVITO delivered the opinion of the court:
 Following a bench trial, defendant Sam Wardlow was found
guilty of unlawful use of a weapon by a felon and was sentenced to
two years' imprisonment. The sole issue in this appeal is whether
the circuit court erred in denying defendant's motion to suppress
the gun that was seized from him during an investigatory stop. For
the reasons that follow, we conclude that defendant's motion to
suppress should have been granted and we reverse his conviction. 
 At the hearing on defendant's motion to suppress, Officer
Timothy Nolan testified that on September 9, 1995, he and his
partner, Officer Harvey, were assigned to the special operations
section of the Chicago police department. They were among eight
officers in four cars who were driving eastbound on West Van Buren. 
Officer Nolan's car was last in the line of vehicles driving in the
area. Although Officer Nolan could not recall whether his car was
marked, he and his partner were in uniform. There was no evidence
concerning whether any of the other cars were marked or concerning
the clothing of the other officers. 
 The cars were "caravaning" eastbound down Van Buren, when
Officer Nolan observed defendant, who was not violating any laws,
standing near the front of 4035 West Van Buren Street. Defendant
looked in the officers' direction, then fled. Holding a white bag
under his arm, he ran through a gangway and then through an alley. 
Officer Nolan drove south, observing defendant as he ran. Near
4036 West Congress, defendant ran towards him. 
 Officer Nolan exited his car and stopped defendant. Without
announcing his office or asking any questions, he conducted a
protective pat-down search of defendant. He could not see inside
the plastic bag that defendant was carrying. He patted the outside
of the bag and "felt a hard object that had a similar shape to a 
revolver or a gun." Officer Nolan believed the object, which was
very heavy, to be a weapon. He looked inside the bag and found a
.38-caliber handgun containing five live rounds of ammunition. He
then placed defendant under arrest. 
 Officer Nolan testified that he and the other officers had
gone to the area because it was "one of the areas in the 11th
District that's high narcotics traffic." Based upon his experience
with investigation of areas in which narcotics are sold, Officer
Nolan knew that it was common to find weapons in the vicinity of
such areas. 
 The police report indicated that defendant, who was 44 years
old, was arrested at 12:15 p.m. 
 The circuit court denied the motion to suppress. A stipulated
bench trial followed, and defendant was found guilty of unlawful
use of a weapon by a felon and was sentenced to a two-year term of
imprisonment. 
 In this appeal, defendant contends that the circuit court
erred in denying his motion to suppress because his presence in a
high crime area and flight from the police officers were
insufficient to justify his investigatory stop. We note that
although no Illinois court has considered whether sudden flight
from police officers in a high crime area justifies a stop, other
jurisdictions are divided on the question. Compare Harris v.
State, 205 Ga. App. 813, 423 S.E.2d 723 (1992), and State v. White,
660 So. 2d 515 (La. Ct. App. 1995)(flight from police officers in
high crime area justifies investigatory stop), with People v.
Holmes, 81 N.Y.2d 1056, 619 N.E.2d 396, 601 N.Y.S.2d 459 (1993),
affirmed, 89 N.Y.2d 838 (1996), Hopkins v. State, 661 So. 2d 774
(Ala. Crim. App. 1994), Britt v. State, 673 So. 2d 934 (Fla. App.
1996), and State v. Hicks, 241 Neb. 357, 488 N.W.2d 359 (1992)
(flight from police officers in high crime area does not justify
stop). 
 Where, as here, there is no challenge to the facts or the
credibility of the witnesses, we review a motion to suppress de
novo. People v. Foskey, 136 Ill. 2d 66, 76, 554 N.E.2d 192 (1990);
Ornelas v. United States, 517 U.S. , , 134 L. Ed. 2d 911,
920, 116 S. Ct. 1657, 1663 (1996).
 Under Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct.
1868 (1968) (codified at 725 ILCS 5/107-14 (West 1994)), a police
officer may stop and detain a person for temporary questioning if
the officer reasonably infers from the situation that the person is
committing, is about to commit, or has committed a crime. Terry,
392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880. To
justify an investigatory stop, the police officer must be able to
point to specific and articulable facts that reasonably warrant the
intrusion. Terry, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct.
at 1880. In determining whether a stop is reasonable, the court
employs an objective standard: would an officer of reasonable
caution, knowing the facts available at the time of the stop,
believe the action was appropriate? People v. Rivera, 272 Ill.
App. 3d 502, 504-05, 650 N.E.2d 1084 (1995), appeal denied, 164
Ill. 2d 577, 660 N.E.2d 1277 (1995). 
 In Illinois, neither a person's mere presence in an area where
drugs are sold (People v. Harper, 237 Ill. App. 3d 202, 205, 603
N.E.2d 115 (1992)) nor sudden flight (People v. Rivera, 233 Ill.
App. 3d 69, 77, 598 N.E.2d 423 (1992)) alone will justify a Terry
stop. Past criminal activity in an area (People v. Hunt, 188 Ill.
App. 3d 359, 362, 544 N.E.2d 118 (1989), appeal denied, 128 Ill.
2d 668, 548 N.E.2d 1074 (1989)) and flight (Rivera, 233 Ill. App.
3d at 77), however, are relevant factors to be considered in
determining whether circumstances justify an investigatory stop.
 For example, in People v. Rivera, 233 Ill. App. 3d 69, 76-77,
598 N.E.2d 423 (1992), police officers entered the defendant's bar,
having received information that cocaine was stored in the basement
and the defendant was involved in its sale and distribution. 
According to the testimony of the police officers, the defendant
appeared frightened and fled when they entered the bar. Rivera,
233 Ill. App. 3d at 77. The court found that the flight of the
defendant, combined with the information known to the officers,
provided the requisite reasonable suspicion. Rivera, 233 Ill. App.
3d at 77.
 From the record before us, we cannot discern the precise
location of the area known by the officers to have a high incidence
of narcotics trafficking. After he testified that he noticed
defendant at 4035 West Van Buren, Officer Nolan was asked why he
went to that area. He responded that it was one of the areas in
the 11th District that had "high narcotics traffic." His testimony
indicates only that the officers were headed somewhere in the
general area. There was no evidence that the officers were
investigating the specific area where defendant had been standing
or that any of the police cars had stopped at that location or that
defendant had any basis for believing that police were interested
in his activity.
 Officer Nolan testified that he was "caravaning" down West Van
Buren when he noticed defendant. He did not testify that the
officers were targeting 4035 West Van Buren because it was known to
be a location where drugs were sold. From the evidence elicited at
the hearing on the motion to suppress, it appears that the officers
were simply driving by, on their way to some unidentified location,
when they noticed defendant standing at 4035 West Van Buren. The
record here is simply too vague to support the inference that
defendant was in a location with a high incidence of narcotics
trafficking or, for that matter, that defendant's flight was
related to his expectation of police focus on him.
 Because we find no support in the record for the contention
that defendant was in a high crime location, we are left only with
the fact of his sudden flight from an area past which police
officers were driving. That circumstance alone does not satisfy
the requirements for a lawful investigatory stop. Rivera, 233 Ill.
App. 3d at 77. Accordingly, the circuit court erred in denying
defendant's motion to suppress. 
 We emphasize the limited nature of our holding. Because we
recognize the importance of the police interest in investigating
crime, we do not hold that the presence of a suspect in a high
crime location, together with his subsequent flight from police, is
never grounds for a Terry stop. Certainly, a "high crime area is
a place in which the character of the area gives color to conduct
which might not otherwise raise the suspicion of an officer." 
White, 660 So. 2d at 519. To pass constitutional muster, however,
the high crime area should be a sufficiently localized and
identifiable location. This limitation is necessary to "assure
that an individual's reasonable expectation of privacy is not
subject to arbitrary invasions solely at the unfettered discretion
of officers in the field," simply because he or she happens to live
in a neighborhood where crime is prevalent. Brown v. Texas, 443
U.S. 47, 51, 61 L. Ed. 2d 357, 362, 99 S. Ct. 2637, 2640 (1979). 
 Accordingly, the weapon that was the basis for defendant's
conviction should have been suppressed because it was discovered as
a result of an unjustified investigative stop. Wong Sun v. United
States, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417
(1963). Rather than remanding, we reverse defendant's conviction
outright because the State will not be able to prevail without the
recovered evidence. People v. Evans, 259 Ill. App. 3d 650, 659,
631 N.E.2d 872 (1994). 
 The judgment of the circuit court is reversed.
 Reversed. 
 RAKOWSKI and McNULTY, JJ., concur.